97 F.3d 1452
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Napoleon HOWARD, Plaintiff-Appellant,
v.
CITY OF SOUTHFIELD, a Municipal Corporation, Defendant-Appellee.
 No. 95-1014.
 United States Court of Appeals, Sixth Circuit.
 Sept. 11, 1996.
 
 Before: KENNEDY, WELLFORD, and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Appellant Napoleon Howard appeals the district court's grant of summary judgment in favor of Appellee, the City of Southfield ("Southfield"), on his federal claims under 42 U.S.C. §§ 1981 and 1983, and state law claims for race discrimination and weight discrimination under the Michigan Elliott-Larsen Civil Rights Act ("MELCRA") and for intentional infliction of emotional distress. Howard claims that Southfield discriminated against him by removing his name from the eligibility list for the position of entry-level firefighter because of his race and his weight. Southfield claims that Howard was deemed ineligible because he was rated "marginally suitable" during his psychological interview. For the following reasons, we affirm.
 
 I. BACKGROUND
 
 2
 Howard was among over 1,200 candidates who applied for fifteen firefighter positions in Southfield's Fire Department for the position of entry-level firefighter. A total of 403 applicants successfully completed all of the requirements to be placed on the eligibility list for the fifteen firefighter positions. Forty-four applicants, who had passed the initial screening and tests, were scheduled for clinical psychological testing and background checks. Among the fifteen firefighters hired, three were African American. Despite having successfully completed every other aspect of the application process, Howard was found ineligible based on his psychological evaluation. Southfield contracted with a psychological testing service to conduct the psychological portion of the application process. In addition to administering several psychological tests to the candidates, psychologist Dr. Harley Stock interviewed each candidate. Based upon Dr. Stock's evaluation, Howard was found to be "marginally suitable" and removed from the eligibility list. Howard appealed this decision before the City of Southfield Police and Fire Civil Service Commission (the "Civil Service Commission"), which sustained Southfield's determination.
 
 
 3
 Howard, an African-American male, weighed approximately 300 pounds at the time of his application. Although he had successfully completed the physical agility test, Dr. Stock concluded that Howard's excessive weight was a physical manifestation of an inability to deal with stress. J.A. at 154. Dr. Stock also determined that Howard exhibited immaturity, interpersonal difficulties, and an impulsive reaction to stress. J.A. at 154. However, Dr. Stock indicated that his analysis was not based solely on Howard's weight. J.A. at 150. In fact, Dr. Stock noted that he based his conclusion on at least two other inappropriate responses Stock received from Howard during the interview. First, in response to a question Dr. Stock posed about Howard's motivation to be a firefighter, Howard told Dr. Stock that he decided to apply for the position to obtain better benefits. According to Dr. Stock, the preferred answer is that the applicant wants to serve the public or would enjoy the type of work involved in firefighting. J.A. at 150-51. In addition, Dr. Stock was troubled by Howard's attitude about his personal finances because Howard had filed for bankruptcy protection and characterized it during the interview as "no big deal for him." J.A. at 150.
 
 
 4
 In support of his weight discrimination claim, Howard contends that Southfield disqualified another applicant from candidacy for a position in the fire department during the psychological testing stage of the application process because of her excessive weight. Howard cites the deposition testimony of Valerie Crump, the Personnel Administrator for Southfield, who testified at her deposition that the Michigan Department of Civil Rights filed suit against Southfield on behalf of Catherine Harman, a white female applicant whom Southfield removed from the eligibility list based on the psychological portion of the application process and based in part on her weight. J.A. at 238. According to Crump, Southfield settled the case involving Harman, J.A. at 239, but we have no proof that Southfield admitted any wrongdoing in conjunction with that settlement.
 
 
 5
 In support of his race discrimination claim, Howard presents statistical evidence from the Equal Employment Opportunity Commission from 1991 compiled in charts prepared by Malcolm Cohen, Ph.D. J.A. at 194-200. The charts indicate that in 1991, there were no African-American males working as firefighters (apart from three in "protective service") in the Southfield Fire Department despite the fact that African Americans comprise twenty-nine percent of the population of Southfield and fourteen percent of the state population. Finally, the charts calculate that the statistical probability was less than one in one thousand for this rate of African-American employment, based on the population of the State of Michigan. J.A. at 196. Cohen concluded "based upon the data reviewed, ... that the statistics fail to support Defendant's allegations that its testing, and selection hiring process are bias free as they relate to African Americans." J.A. at 197. In addition to this statistical evidence, Howard cites the affidavit of William Foster, a former Fire Reserve Cadet Coordinator for Southfield, who testified that he witnessed numerous white males employed as firefighters for Southfield who appeared grossly overweight but were still employed by Southfield and not required to undergo any type of weight reduction program. J.A. at 188-89.
 
 
 6
 The district court found that Howard did not state a prima facie case of discrimination based on race or weight because he failed to establish his eligibility for the position in question. The district court reasoned that Howard provided no evidence "to support any assertion that the evaluation was discriminatory in any way or that the criteria used by the Police and Fire Civil Service Commission were applied differently to [him] than to other applicants." See District Court Order dated December 1, 1994. Alternatively, the district court found that even if Howard had proven his eligibility, Southfield established objective reasons for not hiring him that Howard did not show were pretextual. Id.
 
 II. STANDARD OF REVIEW
 
 7
 This court reviews a district court's grant of summary judgment de novo, applying the same test that the district court utilizes. Adkins v. United Mine Workers, 941 F.2d 392, 399 (6th Cir.1991), cert. denied, 502 U.S. 1098 (1992). Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 III. ANALYSIS
 A. Section 1981 Claim
 
 8
 Howard argues that the district court erred by granting summary judgment on his § 1981 claim. Section 1981 provides that all persons shall have the same right to make and enforce contracts, and to enjoy all conditions of the contractual relationship regardless of race. 42 U.S.C. § 1981.[1] To state a claim for race discrimination under § 1981, a plaintiff must set forth the same elements as those required for a Title VII disparate treatment claim under the McDonnell Douglas/Burdine framework. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992). Therefore, to establish a prima facie case of race discrimination, Howard must show (1) that he is a member of a protected group, (2) that he applied for and was qualified for a job for which the employer was seeking applicants, (3) that he was rejected despite his qualifications, and (4) that the employer hired a person with lesser qualifications, or alternatively, that he was treated worse than "a similarly situated non-protected" person. Gafford v. General Elec. Co., 997 F.2d 150, 167 n. 9 (6th Cir.1993); Mitchell, 964 F.2d at 582 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56 (1981)); Shah v. General Elec. Co., 816 F.2d 264, 268 (6th Cir.1987); Grano v. Department of Dev. of Columbus, 637 F.2d 1073, 1079-81 (6th Cir.1980). Cf. O'Connor v. Consolidated Coin Caterers Corp., 116 S.Ct. 1307, 1310 (1996) (holding that "[b]ecause it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case").
 
 
 9
 Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for rejecting the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant offers a legitimate reason, the burden of production shifts back to the plaintiff to demonstrate that the discrimination was a determinative factor in the plaintiff's termination. McDonnell Douglas, 411 U.S. at 804-05. The plaintiff may meet this burden by showing (1) that the stated reasons had no basis in fact, (2) that the stated reasons were not the actual reasons, or (3) that the stated reasons were insufficient to explain the employer's action. Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir.1991). The burden of persuasion, however, always remains with the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).
 
 
 10
 Under Title VII, a plaintiff may prove discrimination based on "disparate treatment," which requires proof of an employer's discriminatory motive, or "disparate impact," which results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups that cannot be justified by business necessity. See Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir.1995). Unlike disparate treatment, proof of disparate impact "does not require a showing of discriminatory motive, since the claim is based on statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination)." Id. However, a § 1981 claim cannot be based on a disparate impact analysis because proof of discriminatory intent is required. See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 389 (1982) (holding that § 1981 "reaches only purposeful discrimination"); Washington v. Davis, 426 U.S. 229, 244-45 (1976). Although disparate impact may be considered as part of a plaintiff's proof in a disparate treatment case, it is not sufficient alone to state a claim under § 1981.
 
 
 11
 Howard argues that he was qualified for the position of firefighter because he had met every requirement except that he did not "pass" the psychological test. Furthermore, Howard contends that Southfield's articulated legitimate reason for not hiring him is a pretext for discrimination. Howard submitted evidence that numerous white male firefighters who were "excessively over weight" remained employed by Southfield as firefighters without being required to undergo any type of weight reduction program. Foster Aff. at 2, J.A. at 189. In addition, Howard presented statistical evidence from 1991 showing that, as a result of previous application processes, African Americans were dramatically underrepresented, or not present at all, in the Southfield Fire Department as compared to the racial composition of the city of Southfield and fire departments state wide. J.A. at 194-200.
 
 
 12
 However, Howard's arguments do not directly address the pool of applicants against whom he was competing. Among the fifteen firefighters hired, three were African American. J.A. at 68. Noticeably absent from Howard's proof is a statistic regarding the racial composition of the applicants or potential applicants during the time frame relevant in this case. The Supreme Court stated in Dothard v. Rawlinson, 433 U.S. 321 (1977), that "[t]here is no requirement ... that a statistical showing of disproportionate impact must always be based on analysis of the characteristics of actual applicants." Id. at 330 (reasoning that "otherwise qualified people might be discouraged from applying because of a self-recognized inability to meet the very standards challenged as being discriminatory"). But Dothard involved a challenge to explicit height and weight requirements for applicants for the position of correctional counselor at a state penitentiary. In contrast, the instant case does not involve an explicit weight restriction. In fact, Southfield stresses that there is not even an implicit weight restriction. Moreover, Southfield's hiring of three African Americans among the fifteen positions filled means that twenty percent of the firefighters hired were African American. Although a "racially balanced work force cannot immunize an employer from liability for specific acts of discrimination," Furnco Constr. Corp. v. Waters, 438 U.S. 567, 579 (1978), it is significant absent other evidence of discrimination.
 
 
 13
 Howard does not claim that Southfield treated him differently than white employees by subjecting him to psychological testing; all applicants who passed the initial screening and tests were required to submit to psychological testing. Nor has Howard shown that Southfield hired any similarly situated white applicant, i.e., overweight white applicant. In fact, assuming that Howard could substantiate his argument that Harman, a white female applicant, was also rejected because of her weight, such proof would tend to show that Southfield's decision was based not on race, but on weight or at least weight as a physical manifestation of disqualifying psychological factors. However, discrimination based on weight does not state a cause of action under § 1981. Moreover, Howard's comparison of his situation to current firefighters is inapposite. Not only may requirements for applicants differ from ongoing requirements for veteran firefighters, but Howard focuses only on the firefighters' weight and fails to address any psychological factors. In addition, Howard has not addressed Dr. Stock's other grounds for finding Howard "marginally suitable" for the position, including Stock's conclusions that Howard had a negative attitude about having filed for bankruptcy and that he did not exhibit the appropriate motivation for seeking the position. There is no showing that Dr. Stock acted out any discriminatory animus.
 
 
 14
 Howard has not met his burden of proving that Southfield intentionally discriminated against him because of his race. In Irvin v. Airco Carbide, 837 F.2d 724 (6th Cir.1987), we affirmed the district court's determination that the plaintiff had failed to show that the employer's stated reason for his discharge was pretextual because the plaintiff's general denial of the employer's justification was not sufficient: "a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." Id. at 726. See Billups v. Methodist Hosp., 922 F.2d 1300, 1304-05 (7th Cir.1991) (after court found that employer rebutted plaintiff's prima facie case of discrimination by showing that it terminated the plaintiff for allegedly abusing a patient, plaintiff could not merely assert that she did not abuse the patient to show pretext). Howard has not shown how his removal from the eligibility list was based on his race. Therefore, we affirm the district court's grant of summary judgment for Southfield on Howard's § 1981 claim.
 
 B. Section 1983 Claims
 
 15
 We also reject Howard's argument that the district court improperly granted summary judgment on his § 1983 claims, which alleged that Southfield's application procedure violated his right to equal protection and his property interest in public employment.[2] "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir.1994) (citation omitted). Moreover, where the defendant is a municipality, the plaintiff must show that the defendant's objectionable actions were made pursuant to an official city policy or custom. Monell v. Department of Social Servs., 436 U.S. 658, 691, 694 (1978).
 
 1. Equal Protection Claim
 
 16
 The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It is essentially "a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, the threshold element of an equal protection claim is disparate treatment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990) (citation omitted).
 
 
 17
 To prove a violation of the equal protection clause under § 1983, Howard must prove the same elements as are required to establish a disparate treatment claim under Title VII. See Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988). Thus, Howard's § 1983 claim that he was denied equal protection based on his race mirrors his § 1981 claim. Because Howard failed to prove intentional discrimination and for the reasons stated above, we affirm the district court's grant of summary judgment dismissing Howard's race discrimination claim under § 1983.
 
 2. Due Process Claim
 
 18
 Howard also asserts a property interest in public employment with the Southfield Fire Department and claims he was denied the position of firefighter without due process in violation of § 1983. Property interests are not created by the due process clause of the Constitution; rather they "stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Furthermore, the mere expectation of a property right is not sufficient:
 
 
 19
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 20
 Id. Moreover, "[o]nly when a violation of state law results in an infringement of a federally protected right can a [§ 1983] cause of action be said to exist." Missouri ex rel. Gore v. Wochner, 620 F.2d 183, 185 (8th Cir.), cert. denied, 449 U.S. 875 (1980).
 
 
 21
 Michigan law states that firefighters shall be hired "only according to qualifications and fitness to be ascertained by competitive examinations." MICH.COMP.LAWS § 38.507; see MICH.COMP.LAWS § 38.512 (describing requirements for examinations). Since Howard did not successfully complete the psychological examination, he cannot establish an entitlement to the position he sought. Moreover, even applicants who successfully completed all of the requirements and therefore remained on the eligibility list had no property right in the position since the number of qualified applicants significantly exceeded the number of available positions. In fact, applicants were notified in writing that completion of testing or other progress in the application process should not be understood as "an offer or guarantee of employment." J.A. at 70, 72. Therefore, Howard failed to establish a vested property interest.
 
 
 22
 Even if Howard had established a property interest in the position of firefighter, however, Southfield argues that Howard was afforded any process that was due. Southfield notified Howard of his right to appeal the Fire Department's decision to the Police and Fire Civil Service Commission. Howard was informed that at the hearing he could be represented by an attorney and present witnesses and medical information or facts. J.A. at 73-74. Southfield also notified Howard that he could have access to his records and the opportunity to examine the City's retained psychologist. The hearing panel sustained the City's decision finding Howard ineligible. This process protected any due process rights Howard may have had. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985) (holding that public employees with a property interest in their positions are entitled to notice and an opportunity to respond prior to discharge). The Supreme Court has summarized the essential requirements of procedural due process:
 
 
 23
 The opportunity to present reasons, either in person or in writing, why proposed actions should not be taken is a fundamental due process requirement.... [A person is also] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.
 
 
 24
 Id. (internal citation omitted). Therefore, we affirm the district court's grant of summary judgment on Howard's procedural due process claim under § 1983.
 
 
 25
 C. Michigan Elliott-Larsen Civil Rights Act Claim
 
 
 26
 Howard claims that the district court erred in granting summary judgment on his claims of race discrimination and weight discrimination under the Michigan Elliott-Larsen Civil Rights Act ("MELCRA"), which provides that:
 
 
 27
 An employer shall not do any of the following:
 
 
 28
 (A) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
 
 
 29
 MICH.COMP.LAWS § 37.2202(1)(a). Howard's race discrimination claim under MELCRA is generally repetitive of his § 1981 claim and his equal protection claim under § 1983. See Rabidue v. Osceola Ref. Co., 805 F.2d 611, 617 (6th Cir.1986) (finding that the language of MELCRA essentially tracks the disparate treatment language of Title VII and that the Michigan Civil Rights Commission has issued interpretive regulations indicating that Title VII should be used as a guide in the interpretation of MELCRA), cert. denied, 481 U.S. 1041 (1987), abrogated on other grounds, Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993). To the extent Howard's MELCRA claim overlaps with his §§ 1981 and 1983 claims, we affirm the district court's grant of summary judgment for the reasons stated above. However, in contrast to a plaintiff claiming violations of §§ 1981 and 1983, a plaintiff may prove a violation of MELCRA based on a claim of disparate impact or disparate treatment. Singal v. General Motors Corp., 447 N.W.2d 152, 155-56 (Mich.Ct.App.1989) (stating that a prima facie case under MELCRA can be made by showing disparate impact, which requires the plaintiff to show that a facially neutral employment practice burdens a protected class more harshly than others).
 
 
 30
 To establish a prima facie case of disparate impact premised on race discrimination, a plaintiff must show that the application process results in the selection of disproportionately fewer African Americans compared to the pool of applicants or potential applicants. See Smith v. Consolidated Rail Corp., 425 N.W.2d 220, 222 (Mich.Ct.App.1988) (discussing requirements for disparate impact based on race). If the plaintiff states a prima facie case of disparate impact, the employer must then meet the burden of showing that the screening tests or job requirements have a "manifest relationship to the employment in question." Id. (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 425 (1975)). Howard has not shown that Southfield hired any white applicant who was similarly situated, i.e., an overweight applicant or someone with the other disqualifying factors Dr. Stock attributed to Howard (immaturity or inability to deal with stress). As indicated above in section III.A., Howard's comparison of his situation to current firefighters is inapposite because requirements for applicants may differ from ongoing requirements for veteran firefighters. Furthermore, since Southfield hired three African-American candidates from the eligibility list, Howard has not successfully shown that Southfield's 1990 application process resulted in the selection of candidates in a racial pattern significantly different from the pool of applicants. Even if Dr. Stock incorrectly assessed Howard's psychological fitness for the position of firefighter, Howard has not shown that the psychological testing process resulted in a disparate impact against African-American applicants.
 
 
 31
 With respect to Howard's weight claim, Howard has not stated a disparate treatment claim because he offered no proof that Southfield intentionally discriminated against him based on his weight. Howard might have been able to prove disparate impact had he shown that Southfield hired only applicants who were not overweight, and/or rejected other applicants who were overweight. Howard presented no evidence regarding the weight of the fifteen firefighters hired. Nor does he present evidence that other overweight applicants were denied employment despite having met the physical requirements of the application process. Although Howard argues that Harman provides another example of weight discrimination, there is not enough in the record on appeal for us to discern whether Southfield discriminated against Harman based on her weight. Crump testified during her deposition that Harman "challenged the city's psychological screening process in the hiring of firefighters," J.A. at 239, but Southfield settled the case involving Harman. J.A. at 238. As part of the settlement, Southfield agreed to "use preemployment psychological tests or psychological examinations validated for job relatedness," id., but Southfield "would not admit that it had not done so in the past." Id. Howard has not presented any testimony from Harman or any evidence documenting the reason that Harman was rated "marginally suitable" by Dr. Stock. See City of Southfield 1990 Firefighter Recruitment Disposition of All Applicants who were Given Psychological, Exhibit E to Southfield's brief in support of its motion for summary judgment. Because Howard has not stated a claim of discrimination based on race or weight, we affirm the district court's grant of summary judgment on Howard's MELCRA claims.
 
 
 32
 D. Intentional Infliction of Emotional Distress
 
 
 33
 Howard contends that the district court erred by dismissing his claim for intentional infliction of emotional distress under Michigan law.
 
 1. Governmental Immunity under Michigan Law
 
 34
 Southfield argues that Howard's claim of intentional infliction of emotional distress is barred by governmental immunity under Michigan law, which provides that:
 
 
 35
 Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function.
 
 
 36
 MICH.COMP.LAWS § 691.1407(1). "To determine whether a governmental agency is engaged in a governmental function, the focus must be on the general activity, not the specific conduct involved at the time of the tort." Pardon v. Finkel, 540 N.W.2d 774, 776 (Mich.Ct.App.1995). The rationale for the "general activity" rule is that using "anything other than the general activity standard would all but subvert the broad governmental immunity intended by the Legislature [because] it would be difficult to envision a tortious act that is a governmental function." Smith v. Department of Pub. Health, 410 N.W.2d 749, 779 (Mich.1987) (Brickley, J., concurring), aff'd sub nom. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); see Jackson v. City of Detroit, 537 N.W.2d 151, 154 (Mich.1995) (describing governmental immunity as "very broad").
 
 
 37
 "A governmental function is an activity expressly or impliedly mandated or authorized by the constitution, statute, or other provision of law." Payton v. City of Detroit, 536 N.W.2d 233, 241 (Mich.Ct.App.1995) (citation omitted), leave to appeal denied, 551 N.W.2d 187 (Mich.1996). In the instant case, the hiring of candidates for entry-level firefighter positions is a governmental function prescribed by Michigan statutes. See MICH.COMP.LAWS § 38.507 (providing that appointments to a paid fire department of a municipality must be made "only according to qualifications and fitness to be ascertained by competitive examinations" and according to the terms of this statute); MICH.COMP.LAWS § 38.512 (providing that "[a]ll examinations for positions shall be practical in their character and shall relate to those matters and shall include those inquiries as will fairly and fully test the comparative merit and fitness of the persons examined to discharge the duties of the employment sought by them."). Accordingly, we affirm based on governmental immunity the district court's dismissal of Howard's intentional infliction of emotional distress claim.
 
 
 38
 2. Merits of the Intentional Infliction of Emotional Distress Claim
 
 
 39
 Alternatively, we affirm on the merits the district court's grant of Southfield's motion for summary judgment on Howard's intentional infliction of emotional distress claim. To withstand a motion for summary judgment on a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must produce evidence of (1) " 'extreme and outrageous' conduct," (2) "defendants' injurious intent or reckless disregard for the consequences of their acts," (3) "causation," and (4) "the actual experiencing of severe distress." Holmes v. Allstate Ins. Co., 326 N.W.2d 616, 619 (Mich.Ct.App.1982); see Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908 (Mich.1985) (citing same four elements); Ledsinger v. Burmeister, 318 N.W.2d 558, 561 (Mich.Ct.App.1982). The Michigan Supreme Court has recognized the definition of this tort set forth in the Restatement (Second) of Torts:
 
 
 40
 Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 
 
 41
 Roberts, 374 N.W.2d at 908-09 (citing RESTATEMENT (SECOND) OF TORTS § 46, comment d, at 72-73). Since Howard failed to state a prima facie case of discrimination, his claim for intentional infliction of emotional distress must also fail because the lawful removal of one's name from an eligibility list cannot constitute outrageous conduct.
 
 IV. CONCLUSION
 
 42
 For the reasons stated above, we AFFIRM the district court's decision in all respects.
 
 
 
 [1]
 Section 1981 provides:
 (a) Statement of equal rights
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 (b) "Make and enforce contracts" defined
 For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
 (c) Protection against impairment
 The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.
 
 
 [2]
 Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.