Tracey HALTON, et al., Plaintiffs,

v.

GREAT CLIPS, INC., et
al., Defendants.

No. 1:99 CV 706.

United States District Court,
N.D. Ohio,
Eastern Division.

April 20, 2000.

William J. Novak, Thomas D. Robenalt, David W. Skall, Susan E. Petersen, Rubenstein, Novak, Einbund, Pavlik, & Celebrezze, Cleveland, OH, for Plaintiffs.

Gregory J. Stenmoe, Tamika Nordstrom, Jason M. Hedican, Briggs & Morgan, Minneapolis, MN, Daniel F. Gourash, Margaret M. Koesel, Porter, Wright, Morris & Arthur, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon Defendants' Motion for Summary Judgment (Doc. # 21). The Plaintiffs have filed a response in opposition to the motion, and the Defendants have filed a reply brief. The matter is thus fully briefed and ready for disposition. For the reasons set forth below, the Defendants' motion is GRANTED IN PART AND DENIED IN PART.

### Background

The Plaintiff Tracey Halton and thirteen others[1] filed suit against Defendants Great Clips, Inc., Cleveland Clips, Inc. and Warren Wright. In Count One of the Complaint, the Plaintiffs contend the Defendants violated 42 U.S.C. §§ 1981, 1982 and 2000a. Great Clips is a Minnesota Corporation which engages in the sale, operation and promotion of hair salons. Compl. at ¶ 2. Cleveland Clips owns the franchise for Great Clips in University Heights, Ohio, and Warren Wright is the President of Cleveland Clips. Compl. at ¶¶ 3, 4. The Plaintiffs allege that Cleveland Clips refused services and/or stylists were instructed to deny services based upon race. Compl. at ¶ 5. Plaintiffs further allege Defendants maintain business policies and practices of race discrimination which prohibit African–American customers from exercising the right to contract, obtain equal treatment, opportunity and service under the law. Compl. at ¶ 6. According to the Plaintiffs, the policies and practices amount to the maintenance of racial segregation and exclusion from a place of public accommodation. Compl. at ¶ 8. The specific polices and practices identified by the Plaintiffs include: refusal to offer "fades" and "relaxers" to African–American customers when identical services were offered to Caucasian customers; a dramatic increase in price for services primarily used by African–American cus-tomers—washes, curls and thermal curls; inadequate training with regard to African–American hair styles; and, failure to offer styling products for African–Americans. Compl. at ¶ 8.

In Count Two of the Complaint, the Plaintiffs contend that the Cleveland Clips salon is a place of public accommodation which conducts business in the general stream of interstate commerce, and that Defendants have deprived the Plaintiffs of the full and equal enjoyment of their goods, services, facilities, privileges, advantages and accommodations based upon race in violation of 42 U.S.C. § 2000a and Ohio Revised Code § 4112.02. Compl. at ¶¶ 12, 15. The Plaintiffs further allege the Defendants have denied the Plaintiffs the right to make and enforce contracts and purchase personal property free from discrimination and other unequal treatment in violation of 42 U.S.C. § 1982 and Ohio Revised Code § 4112.02, and Plaintiffs have been denied equal right to enforce contracts for services in violation of 42 U.S.C. § 1981 and Ohio Revised Code § 4112.02. Compl. at ¶¶ 16, 17. Finally the Plaintiffs allege state law claims of negligence and intentional and negligent infliction of emotional distress. Compl. at ¶¶ 18, 19. As relief, the Plaintiffs seek compensatory and punitive damages, injunctive relief, attorney's fees and costs. Compl. at ¶¶ 10, 21.

### Discussion

#### Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those por-

---

1. These other individuals include: Mia Allmond; Ann Williams; Patricia Smith; Janet Mosley; Geraldine Stewart; Twila Walker; Shirley Oldham; Brenda Lightning; Sheila Halton; Karna Summerall; Mary Booker Lloyd; Ella Reid; and, Monica Lloyd.

tions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this

standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

### 42 U.S.C. § 2000a

In the motion for summary judgment, the Defendants contend that Plaintiffs' federal public accommodation claim must fail for three reasons: (1) Plaintiffs failed to satisfy the jurisdictional prerequisites;

(2) Cleveland Clips is not a place of public accommodation; and, (3) the Plaintiffs have not established a *prima facie* case of discrimination.

The Defendants argue that in Ohio, a plaintiff must satisfy the jurisdictional prerequisite before bringing a claim under 42 U.S.C. § 2000a, and that because the Plaintiffs in this case have failed to do so, their claims must be dismissed. Plaintiffs do not dispute the assertion that a jurisdictional prerequisite must be satisfied; however, they contend that they have met the prerequisite.

Title 42 U.S.C. § 2000a–3(c) provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) of this section before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a–3(c).

■ Ohio does have statutory provisions which prohibits discrimination in places public accommodation. Ohio Rev.Code § 4112 .02(G).[2] And, Ohio has a statutory provision authorizing a State or Local authority to grant or seek relief from this prohibited practice. Ohio Rev.Code § 4112.05.[3]

---

**2.** Ohio Revised Code § 4112.02(G) provides:

(G) For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry,

the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

**3.** Ohio Revised Code § 4112.05(B)(1) provides:

Any person may file a charge with the commission alleging that another person has

As Ohio has statutory provisions prohibiting discrimination in places of public accommodation and a mechanism for seeking relief, the Plaintiffs are required to first avail themselves of the state administrative remedies before proceeding in federal court. *Watson v. Fraternal Order of Eagles*, 915 F.2d 235, 242 (6th Cir.1990) ("We also need not reach the merits of plaintiffs' action under Title II because it appears that plaintiffs have not exhausted their administrative remedies as required by Title II.").

Plaintiff Tracey Halton did submit documentation that she filed a claim relating to this matter with the Ohio Civil Rights Commission; however, there is no evidence that any of the other Plaintiffs in this action submitted such claims to this Commission. As the Plaintiffs other than Tracey Halton have failed to meet the prerequisite before proceeding in federal court, this Court need not reach the merits of their claims under Title II. *Watson* 915 F.2d at 242.

■ Even if all of the Plaintiffs had fulfilled the prerequisite to filing a Title II claim, it would still be subject to dismissal. The Defendants contend, based upon a plain reading of 42 U.S.C. § 2000a(b), Cleveland Clips is not a place of public accommodation.

42 U.S.C. § 2000a(b) provides:

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

(1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

(3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

The Plaintiffs contend the statute should be read broadly and that Cleveland Clips is an establishment within the premises of University Corners Shopping Plaza where establishments covered by 2000a(b)(2) are physically located. These covered establishments include restaurants which Plaintiffs claim Defendants held the salon out as serving patrons of such covered establishments. To support this position, the Plaintiffs state that the Defendants took discount flyers to the restaurants, placed flyers on cars of customers of the covered establishments and engaged in other various promotional activities.

It is true that the list of covered establishments traditionally has been construed

engaged or is engaging in an unlawful discriminatory practice. In the case of a charge alleging an unlawful discriminatory practice described in division (A), (B), (C), (D), (E), (F), (G), (I), or (J) of section 4112.02 or in section 4112.021 or 4112.022 of the Revised Code, the charge shall be in writing and under oath and shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed. In the case of a charge alleging an unlawful discriminatory practice described in division (H) of section 4112.02 of the Revised Code, the charge shall be in writing and under oath and shall be filed with the commission within one year after the alleged unlawful discriminatory practice was committed.

broadly. *Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1269 (7th Cir.1993). However, the Plaintiffs do not argue that Cleveland Clips itself is a covered establishment. Instead, the Plaintiffs focus on the language-within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment—and contend this language brings Cleveland Clips within the purview of the statute.

As a threshold matter, Cleveland Clips is not an establishment within the meaning of the § 2000(b). Courts have found covered establishments include, *inter alia:* health spas,[4] golf clubs,[5] and beach clubs,[6] but the Act clearly does not include retail stores and food markets because there has been little if any discrimination in the operation of these establishments. *Newman v. Piggie Park Enterprises*, 377 F.2d 433 (4th Cir.1967), *aff'd*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

None of the case law addressing a covered establishment has specifically found that a hair salon falls within the meaning of the statute. Even *Rousseve v. Shape Spa for Health and Beauty Inc.*, 516 F.2d 64 (5th Cir.1975) is factually different from this case. In *Rousseve*, parties stipulated that the health spa offered curative or rehabilitative treatment, diets, physical exercise, baths, and sauna treatments. And, parties stipulated that studio facilities included gymnasium equipment, thermal baths, whirlpool baths, inhalations rooms, solaria, and swimming pools. Body massages and facials were also available. The Court found these activities recreational in nature bringing them under the broad definition of entertainment.

Entertainment may be denied as "the act of entertaining; agreeable occupation for the mind; diversion; amusement: *Solving the daily crossword puzzle is an entertainment for many . . .* something affording pleasure, diversion, or amusement esp. a performance of some kind." Webster's Encyclopedic Unabridged Dictionary of the English Language 648 (1996 ed.). In ordinary parlance "a place of entertainment" does not include a hair salon. Notwithstanding, there is no evidence that Cleveland Clips has ever offered amenities closely resembling those of the defendant in *Rousseve*, this Court would be hard-pressed to find that the hair services offered by Cleveland Clips could be deemed "entertainment" within the meaning of the statute.

Moreover, if Congress wanted to include, within the meaning of the statute, other types of establishments such as a service establishment, it could have amended Title II; after all, Congress had over three decades to do so. This inaction by Congress could not be a mere oversight or an expectation that courts would broadly interpret the statute to include basically any type of establishment because Congress has subsequently defined "public accommodation" more broadly. *See* the Americans with Disabilities Act, 42 U.S.C. § 12181.[7]

---

4. *Rousseve v. Shape Spa for Health and Beauty Inc.*, 516 F.2d 64 (5th Cir.1975); *Johnson v. Brace*, 472 F.Supp. 1056 (E.D.Ark.1979).

5. *Evans v. Laurel Links, Inc.*, 261 F.Supp. 474 (E.D.Va.1966); *Anderson v. Pass Christian Isles Golf Club, Inc.*, 488 F.2d 855 (5th Cir. 1974).

6. *United States v. Beach Associates, Inc.*, 286 F.Supp. 801 (D.Md.1968).

7. 42 U.S.C. § 12181(7) provides:
 Public accommodation
 The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—
 (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
 (B) a restaurant, bar, or other establishment serving food or drink;
 (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
 (D) an auditorium, convention center, lecture hall, or other place of public gathering;

Plaintiffs' assertion that the shopping plaza which rents to covered establishments brings it within the language–within the premises of which is physically located any such covered establishment—seems to be in error. This reading of the statute would bring every establishment in any mall or any shopping center within the statute's purview. In that event, Congress could have just as easily included in § 2000a(b) all retail establishments and/or all shopping centers when it enacted Title II or Congress could have subsequently amended the statute to include such establishments.

This Court reads the language of that portion of the statute to mean within the actual physical boundaries of a particular establishment is located a covered establishment, e.g. within the physical boundaries of the space rented by the hair salon itself is located a covered establishment. In other words, the premises does not include an entire shopping center or mall where the party has no control over who the other tenants may be and whether the other tenants will operate covered establishments. If the Court read the statute otherwise, a place of public accommodation would depend upon who the other tenants of a shopping center happened to be a particular day. One day a business may be covered because another tenant operates a covered establishment and the next day, if a covered establishment vacates a shopping center, other tenants would not fall within the meaning of the statute. Congress could not have intended such a confusing and inconsistent result which depends upon such tenuous circumstances which are completely out of the control of an accused establishment.

The District Court decision in *United States v. Beach Associates Inc.*, 286 F.Supp. 801 (1968), is factually different from this action. In *Beach Associates*, the Bay Carry–Out Shop operated primarily to provide food for patrons at the Beverley Beach Club. On the premises of the Beach Club immediately adjoining the Bay Carry–Out Shop was a large building with chairs and tables for approximately 200 people. Although the Bay Carry–Out Shop, a covered establishment, was not physically located within the Beach Club, the Court nonetheless found the Bay Carry–Out Shop was physically located within the premises of the Beach Club pursuant to § 2000a(b). In making this determination, the Court noted, *inter alia*, the Bay Carry–Out Shop replaced a restaurant on the beach property shortly after the passage of the Civil Rights Act of 1964; the same family controlled both establishments; the carry-out was designed to help attract customers to the beach; and most of the carry-out's customers came from the Beach Club. None of these same factors are present in this litigation. Here there is no purposeful intent to avoid the Civil Rights Act of 1964, the Defendants do not own the shopping center and they have no control over who the other tenants may be. Furthermore, there is no evidence that a majority of the Defendants' business came from the other businesses in the shopping center. Granted, location and perhaps the other types of establishments in the shopping center were probably factors taken

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

into account when the Defendants chose to set up shop, but the type of tenants in the shopping center will undoubtedly change over time. Whether Defendants' business is covered or not covered by the statute should not depend upon these changing factors, factors over which the Defendants have not control.

Having determined that Cleveland Clips is not a place of public accommodation within the meaning of 42 U.S.C. § 2000a, Plaintiffs' claims based upon this statutory section must be fail. Accordingly, the Defendants are entitled to summary judgment on this issue. As the Defendants are entitled to summary judgment on this basis, the Court need not address the Defendants' alternative argument concerning whether Plaintiffs' established a *prima facie* case of discrimination.

### Remaining Claims

Before addressing the remaining state and federal claims, it is imperative to address the four instances Plaintiffs claim amount to violations of federal law. In the Complaint, the Plaintiffs contend: the Defendants did not offer "fades" and "relaxers" to African–American customers; the Defendants dramatically increased the price for services primarily used by African–American customers—washes, curls and thermal curls; the Defendants provided inadequate training with regard to African–American hair styles; and, the Defendants failed to offer styling products for African–Americans. Compl. at ¶ 8. Based upon the Plaintiffs depositions or portions thereof which were submitted to the Court, it is clear that each of these Plaintiffs cannot allege violations of state and federal laws based upon all four above-mentioned instances.

It should be noted that the Defendants concede that all Plaintiffs have met the first two elements of the *prima facie* case. However, a close review of the deposition transcripts reveals that this concession is erroneous. Two of the Plaintiffs, Tracey Halton and Karna Summerall are former

employees of Defendants Cleveland Clips and Warren Wright; the other Plaintiffs were customers or potential customers of the Defendants. There is no evidence that the Defendants failed to provide Plaintiffs Tracey Halton and Karna Summerall various types of hair styles or various types of hair treatment such fades or relaxers. First, there is no evidence that either of these Plaintiffs specifically requested a fade style much less any evidence that Defendant denied providing either with this hair style. Second, it is true that Tracey Halton asked Defendant Warren Wright about relaxers for her customer on several occasions, but she also testified that the stylists at Cleveland Clips used to give each other relaxer treatments in the backroom of the Defendants' salon. Ms. Halton Dep. at 49–50. Again, there is no evidence no evidence that either one of these Plaintiffs was denied this service. Thus, neither of these Plaintiffs has a valid claim under § 1981 for the denial of these services.[8] Likewise, there is no evidence that either of these two Plaintiffs were charged anything for services provided by the salon; thus, the Plaintiff employees do not have a claim under § 1981 with respect to Defendants price increases.

The former employees may have potential claims against Defendants regarding the alleged failure to train with regard to African–American hair styles, but the other Plaintiffs clearly cannot assert these claims. Conversely, the customers and potential customers may have potential claims with respect to fade haircuts, relaxers, price increases, and products but these Plaintiffs cannot assert a claim for the alleged failure to train. For clarity, Plaintiffs will be divided into two groups— (1) former employees and (2) customers or potential customers.

### 42 U.S.C. § 1981 and related state law claims

 The Defendants assert that to establish a *prima facie* case of discrimination

---

**8.** The fact that these Plaintiffs may have had to perform these services in the backroom

does not change the fact that the Plaintiffs fail to state a claim under § 1981.

under this statute, the Plaintiffs must show: (1) they are members of a protected class; (2) they attempted to contract for certain services; (3) they were denied the right to contract for certain services; and, (4) such services remained available to others outside the protected class. Defendants concede that Plaintiffs are able to meet the first two criteria, but they argue the Plaintiffs cannot meet the second two.[9]

Title 42 U.S.C. § 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

■ Absent direct evidence of discrimination the burden-shifting approach for inferential proof of discrimination set forth in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) is used in cases alleging a violation of 42 U.S.C. § 1981. *Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir.1999) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132, (1989); *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 575 N.E.2d 1164 (1991)). In this burdenshifting analysis: (1) the plaintiff must establish a *prima facie* case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual. *Hollins*, 188 F.3d at 658 (citing *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir.1996)).

The *prima facie* case that will need to be established differs slightly depending upon the Plaintiff and the specific facts in support of the alleged violations. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to differing factual situations."). However, the same *prima facie* elements are used to analyze a claim of discrimination under Ohio law. *Pasko v. American National Can Company*, 998 F.Supp. 807, 810 (N.D.Ohio 1998) (citing *Ohio Civil Rights Commission v. Ingram*, 69 Ohio St.3d 89, 630 N.E.2d 669 (1994)).

### Plaintiff employees

■ The only possible claims which these two Plaintiffs may assert are the inadequate training and failure to offer certain hair products.[10] Plaintiffs Tracey Halton and Karna Summerall contend that although they received training from the Defendants, absent from that training was instruction on care, treatment and styling for African–American hair. Specifically, these Plaintiffs contend that Defendants provided training for the application of perms but it did not provide training for the application of relaxers. The Plaintiffs also contend that Defendants offered training for fades and bald fades on Caucasian

---

9. Defendants argue that Plaintiffs have abandon their claims under § 1981 because they failed to address the issues in their brief in response. The same facts support the Plaintiffs § 1981 and § 2000a claims. Contrary to Defendants' assertion, it does not appear that Plaintiffs abandon these claims. *See Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir.1999) (Plaintiff alleged racial discrimination under each provision for acts arising out of the same

facts and circumstances, the Court of Appeals considered the claims together citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992)).

10. This issue regarding sale of products for African–American hair is brought pursuant to 42 U.S.C. § 1982 and will be discussed later in this Opinion.

hair, but refused to offer similar training for African–American hair. Br. at 22–23.

Initially, it should be noted that each of these Plaintiffs is a licensed cosmetologist, and as part of that training process received instruction with respect to hair cuts, chemical treatments including relaxers and perms, and hair coloring. Ms. Summerall Dep. at 17; Ms. Halton Dep. at 20–21. Neither Plaintiff has shown that she previously requested any additional training from Defendants nor have either shown such a request was denied by Defendants because of Plaintiffs' race.

The Plaintiffs' own testimony rebuts the very allegations in the Complaint. There is uncontradicted testimony at deposition that each knows how to apply a relaxer and how to provide a fade and/or a bald fade haircut. Ms. Summerall Dep. at 17, 22; Ms. Halton Dep. at 47, 113. And, there is testimony that in fact the stylists gave each other relaxers in the backroom and they provided fade haircuts to customers. Ms. Summerall Dep. at 63; Ms. Halton Dep. at 49. Since these Plaintiffs received training with respect to relaxers and fades prior to their employment with Defendants, this Court fails to see how Defendants could be liable to these Plaintiffs under § 1981 or any comparable Ohio law for failing to teach them techniques they already knew. Moreover, this Court knows of no legal requirement that an employer train and employee to perform a service it does not provide; to wit: a relaxer treatment.

To the extent the Plaintiffs are attempting to argue that other employees at Defendants' salon did not receive adequate training, the argument must fail. Ms. Halton and Ms. Summerall are the only two Plaintiff employees named in this action. What training other employees may or may not have received is not the subject matter of this litigation, and these two

Plaintiffs do not have standing to assert potential claims of individuals who are not parties to this litigation.

Accordingly, as Plaintiffs Tracey Halton and Karna Summerall are unable to allege facts showing a genuine issue of material fact with respect to their § 1981 and related state law claims, the Defendants are entitled to summary judgment on this issue.

**Plaintiff customers/potential customers**

The remaining Plaintiffs claim discriminatory practices by the Defendants in three areas: (1) application of chemical treatments to straighten or curl hair;[11] (2) available hair styles known as fades or bald fades; and, (3) pricing. With respect to the Plaintiffs' allegations that they were denied fades and relaxers each Plaintiff must show: (1) she is a member of a protected class; (2) she sought the service from the Defendants; (3) she was denied the service; and, (4) others who were not members of the protected class received the service. On this issue of pricing a similar analysis is applicable, each Plaintiff must show: (1) she is a member of a protected class; (2) she sought certain services from the Defendants; (3) for the same service, she was charged a different price than non members of the protected class.

Again, the Defendants concede that these Plaintiffs meet the first to prongs of the *prima facie* case; they are members of a protected class and they sought services from the Defendants. This is only partially true. Not every Plaintiff experienced the alleged discrimination in each of the three instances.

For clarity, the Court will begin by addressing each of the three instances of alleged discrimination identified by Plaintiffs.

---

**11.** With respect to this issue, the Defendants note in their brief the distinction between a "perm" and a "relaxer". A perm is a chemical treatment with a lower pH factor used to curl hair; a relaxer is a chemical treatment used to straighten hair. Defendants contend that despite the difference in these services, members of the African–American community refer to relaxers as perms. Defs.' Br. at 8.

## Relaxers

■ Most of the Plaintiff customer/potential customers testified at deposition that they had relaxers applied to their hair at other salons because Defendants did not offer that service.[12] These Plaintiffs [13] therefore arguably meet the first two prongs of the *prima facie* case—they are members of a protected class and they arguably sought services from the Defendants' salon.[14]

Assuming these Plaintiffs arguably meet these first two elements, there are admittedly problems with the third element of the *prima facie* case. It is true that Defendants denied these Plaintiffs relaxers, but the reason it did so was because as a limited-service salon relaxers were not a service they offered to any customers. The Plaintiffs argue that the fact that Defendants do not provide relaxers to African–American customers but provide perms to Caucasian customers is evidence of discrimination. Plaintiffs contend that relaxers are most often requested by African–American women and this service is substantially similar to a perm in terms of skill, effort and cost. The fact is, Defendants operated a limited-service salon, and they do not offer hair relaxers, hair coloring, manicure, pedicures or facials. This Court knows of no law which would require a business to offer a particular service simply because it is often requested by a particular race. Defendants have offered insightful examples which illustrate the defects in Plaintiffs' assertion: "[t]his is no different than Irish Americans suing

McDonalds because they do not serve Irish stew, or an Amish person suing Jiffy Lube because they do not service a horse and buggy." Defs.' Reply at n. 3.

■ To the extent the Plaintiffs attempt to argue disparate treatment, their claim must fail because a § 1981 claim cannot be based on a disparate impact analysis as proof of discriminatory intent is required. *Howard v. City of Southfield,* 1996 WL 518062 (6th Cir.1996) (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 389, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (holding that § 1981 "reaches only purposeful discrimination")); (*Washington v. Davis,* 426 U.S. 229, 244–45, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Disparate impact may be considered as part of a Plaintiff's proof in a disparate treatment case; it is not sufficient to state a claim under § 1981. *Id.* at *3.

There is evidence that some of the stylists offered relaxer treatments to customers. Ms. Summerall Dep. at 28; Mr. Wright Dep. at 35. However, these were isolated incidents and the service was never authorized. In fact, one of the stylists who provided this service to a customer was terminated. Ms. Williams Dep. at 37–40. The fact that some of the stylists provided each other with relaxers in the back room reinforces the conclusion that they were not authorized by Defendants. In any event, the service was never authorized for paying customers. The fact that the Defendant may have looked the other way or impliedly authorized the treatment

---

**12.** A portion of Plaintiff Monica Lloyd's deposition was submitted by the Defendants. No other deposition testimony for this Plaintiff was submitted. There is absolutely no evidence that this Plaintiff experienced any of the alleged discriminatory practices by the Defendants. Accordingly, Defendants are entitled to summary judgment against this Plaintiff on all Counts in the Complaint.

**13.** Mia Allmond, Ann Williams, Patricia Smith, Janet Mosley, Geraldine Stewart, Twila Walker, Shirley Oldham, Brenda Lightening, Sheila Halton, Mary Booker Lloyd, and Ella Reid.

**14.** The term "arguably" is inserted here because the Court gives these Plaintiffs the benefit of the doubt that they actually requested relaxers. Many of these Plaintiffs state that Tracey Halton told them that Defendants would soon offer the relaxers. The logical inference drawn from this testimony is that these Plaintiffs had discussions with Ms. Halton about the services offered at Cleveland Clips and presumably asked if she could provide them with this services.

for other stylists was a courtesy extended to the employees, one Defendants likely will not extend in the future.

Even if the Plaintiffs could meet the third element of their *prima facie* case, they have submitted no evidence which supports a finding in their favor with respect to the fourth element of the *prima facie* case. There is no evidence that Caucasian customers were provided relaxers by these Defendants. In fact, Tracey Halton testified that she never provided a relaxer to any customer, and she is not aware of any stylist at Cleveland Clips providing a relaxer to a customer. Ms. Halton Dep. at 49–50.

Although Plaintiffs have failed to set establish a *prima facie* case of discrimination with respect to Defendants failure to provide relaxers, Plaintiff Mia Allmond has arguably established the elements of a *prima facie* case with respect to her request for a perm. Ms. Allmond is a member of a protected class and on two separate occasions she requested a perm from the Defendants. Ms. Allmond Dep. at 16. When Ms. Allmond asked a "white lady" working at Defendants' salon for a perm, the woman responded, "we don't take appointments and we don't do perms." Ms. Allmond Dep. at 17. A few weeks later, Ms. Allmond returned to Defendants' salon and was told by another employee, "we don't's do perms for black hair." Ms. Allmond Dep. at 19.[15] While admittedly Ms. Allmond was seeking a relaxer service from Defendants, *Id.* at 19, she has in the past had chemical applications which curled her hair. *Id.* at 23. There is no evidence that the first employee she spoke with attempted to determine whether Ms. Allmond was seeking a perm or a relaxer. Instead the employee may have made an assumption about the services Ms. Allmond was seeking based upon her race. As there is no evidence that the Defendants' employee sought to determine the type of chemical treatment requested by this customer, it is at least arguable that she could have been denied services based upon her race. Fur-

thermore, there is evidence that Warren Wright wanted his employees to screen telephone calls to attempt to determine the race of the potential customer. The apparent purpose of this was to avoid confusion by informing potential African–American customers that Cleveland Clips does not provide relaxers. Without asking whether the potential customer identified as African–American wanted a chemical process that curls hair or a chemical process that straightens hair, it is arguable that a jury could find that Defendants simply denied perms (the chemical process to curl hair) to African–Americans. This evidence would support Ms. Allmond's claim since she did in fact ask for a perm and was denied the service without at least one employee inquiring about the exact process she wanted.

Accordingly, Plaintiff Mia Allmond has set forth a *prima facie* case of discrimination. Defendants have not articulated a non-discriminatory reason for its actions. Therefore, the Defendants are not entitled to summary judgment on this issue. Plaintiff Mia Allmond may therefore proceed on her § 1981 and related state law claims insofar as it relates to Defendants' failure to provide her the service requested.

### Fades

■ With respect to this hair style, only one Plaintiff, Brenda Lightning, states an arguable claim under § 1981 and Ohio law. At their depositions, *none of the other* Plaintiffs indicated that they sought and were refused a fade or bald fade haircut. Brenda Lightning claims that she sought this particular haircut and was told ironically by Plaintiff Tracey Halton that she would have to go across the street. Ms. Lightning Dep. at 29. Ms. Summerall however testified at her deposition that Michelle Van Belleghem did provide a bald fade haircut to a Caucasian. Ms. Summerall Dep. at 65.

---

**15.** Ms. Allmond did testify that the second woman knew she wanted a relaxer. *Id.* at 21.

Based upon this evidence, Brenda Lightning has established a *prima facie* case of discrimination—she is a member of a protected class, she sought a fade haircut from Defendants, she was denied this service and the service was provided to others who are not members of the protected class. The Defendants have failed to articulate a non-discriminatory reason for its action, accordingly summary judgment is inappropriate. As Plaintiff Brenda Lightning is the only person to present evidence establishing a *prima facie* case with respect to this service, she may proceed with her § 1981 and related state law claims insofar as it relates to this service.

### Pricing

■ With respect to the price increase, eight of the fourteen Plaintiffs set forth evidence establishing that they were effected by the price increase. These eight Plaintiffs include: Patricia Smith, Janet Mosley, Geraldine Stewart, Shirley Oldham, Brenda Lightning, Sheila Halton, Mary Booker Lloyd, and Ella Reid. The remaining Plaintiffs, Mia Allmond, Ann Williams, Twila Walker, and Monica Lloyd either testified that they did not experience an price increase or there was no evidence submitted to support a finding that the particular Plaintiff experienced a price at Cleveland Clips.

With respect to price increases, Plaintiffs contend that Defendants required a count of African–American customers, and once it was determined what types of services these customers were requesting, the Defendants tripled the price.[16] Plaintiffs contend that Caucasian women were not charged the same prices for these services.

The Plaintiffs have presented sufficient evidence to establish a *prima facie* case of discrimination; each is a member of protected class who sought services at the Defendants' salon, and each incurred or were told of the price increase while non-members of the class were presumably not

charged the same price. See Ms. Stewart Dep. at 30–31.

In response to this assertion, Defendants have articulated a non-discriminatory reason for the price increase. Defendants admit that initially, the price for the service was artificially low to attract customers The prices charged by the salon were intended to reflect the time necessary to perform a particular service. After the initial prices were established, the Defendants discovered the service most often requested by African–American customer took between an hour and an hour and a half. According to Defendants, most stylists could perform three haircuts in an hour, and a client was charged $9.00 for this service. Since the shampoo, blow dry and thermal curl took an hour, Defendants multiplied the price of a haircut by three, thereby equaling the amount of money that could be earned in an hour for three haircuts.

As the Defendants have established a non-discriminatory reason for the price increase, the burden shifts to the Plaintiffs to show that the Defendants' articulated reason is merely a pretext. To establish a pretext, Plaintiffs are "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate [the action]; or (3) that [the reasons] were insufficient to motivate [the action]." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

There is arguable evidence that the proffered reasons did not actually motivate Defendants' action. Tracey Halton testified that Warren Wright told her that the reason the price for this service went up was, "[b]ecause too may African–American women were coming in requesting that service." Ms. Halton Dep. at 105. Tracey Halton also submitted an Affidavit averring that after the number of African–

---

**16.** The services most often requested by African–American were a shampoo, blow dry and thermal curl.

Americans patronizing the Defendants' salon decreased, Mr. Wright stated, "it worked". Ms. Halton Aff. at ¶ 49. As the Plaintiffs have arguably established that the proffered reason given by the Defendants may not have actually motivated the action, Defendants are not entitled to summary judgment with respect to this particular instance of the § 1981 and related state law claims.

### 42 U.S.C. § 1982

Title 42 U.S.C. § 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

Admittedly, Plaintiffs' assertions with respect to this claim are unclear. It appears Plaintiffs first contend that the products used for African–American customers by Defendants' salon was not appropriate because the products tended to dry out Plaintiffs' hair. The Plaintiffs further contend that since most of Defendants' customers were African–American, it is not a reasonable business decision to primarily provide products meant for hair generally associated with Caucasians. Pls.' Br. at 33. Under the caption "Plaintiffs Section 1982 Claim is Viable", in Plaintiffs' brief in opposition to Defendants's motion for summary judgment, the Plaintiffs contend that they have a right to have their hair styled and to buy products. Plaintiff's further contend that by denying customers the right to return and to continue to contract for the services already rendered Defendants impaired and interfered with Plaintiffs' rights to make a purchase. Pls.' Br. at 34.

▪ In this instance, § 1982 concerns the right of all citizens to purchase personal property. As a threshold matter, there is no evidence that the Defendants refused to sell any Plaintiff a particular product that was for retail sale in the salon. The fact that Defendants did not carry a particular product or the products it carried or used were not preferred by African–

American customers does not mean that Defendants violated § 1982 or any related state law claim. Furthermore, Plaintiffs' opinion that it was not a reasonable business decision to carry products that are meant primarily for hair associated with Caucasians is of no import. The reasonableness or unreasonableness of the decision to carry a particular product does not equate to a refusal to sell an offered product which would be prohibited by § 1982 and Ohio law. Second, there is no evidence that the Defendants denied any customers the right to return to its salon for the services it already rendered.

The Plaintiffs woefully fail to allege any facts which show they may have an arguable claim under § 1982 and Ohio law. Accordingly, the Defendants are entitled to summary judgment on this claim.

### State Law Claims

### Public Accommodation under Ohio Law

In Ohio it is unlawful for

any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.

Ohio Rev.Code § 4112.02(G). "Place of public accommodation" is construed broadly under Ohio law and includes: "any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place for the sale of merchandise, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public." Ohio Rev.Code § 4112.01(9).

▪ There is not doubt that Defendants' establishment is a place of public accommodation under Ohio law. The Supreme Court of Ohio has determined that

federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm.,* 66 Ohio St.2d 192 196, 421 N.E.2d 128 (1981) (citing State ex rel. *Republic Steel Corp. v. Ohio Civil Rights Commission,* 44 Ohio St.2d 178, 339 N.E.2d 658 (1975)); *Weiner v. Cuyahoga Community College District,* 19 Ohio St.2d 35, 249 N.E.2d 907 (1969).

The Court already determined under the burden-shifting approach of *Burdine,* and *McDonnell Douglas* that some of the Plaintiffs have alleged facts sufficient to survive summary judgment with regard to their alleged violations of § 1981. These same facts and circumstances which Plaintiffs alleged to support their cause of action under § 1981 are the same facts and circumstances used to support their Ohio public accommodation claim. The same exhaustive analysis applicable under § 1981 is also applicable to the Plaintiffs' Ohio public accommodation claim. Accordingly, the same Plaintiffs whose claims survived summary judgment on the alleged violations of § 1981 also survive Defendants' motion for summary judgment on this issue for the same reasons previously articulated.

### Intentional Infliction of Emotional Distress

■■■ Intentional infliction of emotional distress is an independent tort. In other words, it does not require an underlying tort for an injured person to recover. *Reamsnyder v. Jaskolski,* 10 Ohio St.3d 150, 462 N.E.2d 392 (1984). To support a claim of intentional infliction of emotion distress, a plaintiff must alleged facts sufficient to show:

> * * *the conduct [of defendant] has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member

of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Yeager v. Local Union 20,* 6 Ohio St.3d 369, 453 N.E.2d 666 (1983) (quoting Restatement (Second) Torts § 46; cmt. D (1965)).

■■■ In support the their claim for intentional infliction of emotional distress, the Plaintiffs contend that under Ohio public policy the law charges Defendants with a higher duty to protect those from whom it solicits and that Defendants breached there duties owed to each Plaintiff as demonstrated by its actions and words.

However, no evidence presented by the Plaintiffs establishes any conduct of Defendants which has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. *Yeager,* 6 Ohio St.3d 369, 453 N.E.2d 666. While the Plaintiffs may have been upset by what they perceived to be inconsiderate and unkind acts by the Defendants, there is no occasion for the law to intervene in every case where some one's feelings are hurt.

Some of the Plaintiffs claim that they suffered humiliation, embarrassment and stress; however, none of these complaints is sufficient to rise to the level necessary to constitute the type of physical or serious

emotional injury contemplated in the tort of intentional infliction of emotional distress.[17] *Yeager, supra.* Accordingly, Defendants are entitled to summary judgment on this issue.

### Negligent Infliction of Emotional Distress

 The Plaintiffs' claims for negligent infliction of emotional distress are subject to summary dismissal. A claim of negligent infliction of emotional distress is limited to instances "where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo,* 73 Ohio St.3d 80, 86–87, 652 N.E.2d 664 (1995). Furthermore, it is well settled that a claim for negligent infliction of emotional distress can be recovered in Ohio where "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks,* 6 Ohio St.3d 72, 451 N.E.2d 759, (1983), paragraph 3a, syllabus. The Supreme Court of Ohio recognized in *Paugh* that a negligent infliction of emotional distress claim can succeed without contemporaneous physical injury if the emotional distress is severe and debilitating, and is reasonably foreseeable. *Id.* There is absolutely no evidence that any of the Plaintiffs witnessed or experienced a dangerous accident or appreciated any actual physical peril nor is there any evidence they suffered from severe and debilitating emotional distress. Accordingly, the Defendants are entitled to summary judgment on this issue.

### Negligence

The Plaintiffs contend that Defendants had a duty to provide equal services for both Caucasians and African–Americans and it had a duty to provide all services to its customers regardless of race. Plaintiffs contend that Defendants breached the duty and injury resulted. In response to Plaintiffs' position, the Defendants argue that Plaintiffs have failed to cite one case establishing a common law duty owed to Plaintiffs.

Defendants' position is correct. At issue in this case is the alleged intentional actions of Defendants and a statutory cause of action and remedy are available to rectify any wrong which may have been done to the Plaintiffs. If the alleged actions by Defendants must be intentional under the statute, they cannot also be the result of negligence. Furthermore, while the Defendants owe certain common law duties to customers of their establishment (e.g. to maintain a safe premises) there is no common law duty to provide all services to its customers regardless of race. Any "duty" in this regard is established by statute which requires a showing of intent. Accordingly, Plaintiffs' negligence claim must fail; thus, Defendants are entitled to summary judgment on this issue.

### Conclusion

In accordance with the forgoing, Defendants' motion for summary judgment (Doc. # 21) is GRANTED IN PART and DENIED IN PART. Defendants' motion for summary judgment on Plaintiffs' claims brought pursuant to 42 U.S.C. § 1982 and related state law claims and Plaintiffs' claims brought pursuant to 42 U.S.C. § 2000a is GRANTED. Defendants' motion for summary judgment on Plaintiffs's claims pursuant to 42 U.S.C. § 1981 and related state law claims is GRANTED except as to Plaintiffs Mia Allmond (on the issue of refusal to provide a perm); Brenda Lightning (on the issue of refusal to provide a fade haircut); and as to certain Plaintiffs' claims regarding price increases: Patricia Smith, Janet Mosley, Geraldine Stewart, Shirley Oldham, Brenda Light-

---

**17.** Plaintiff Tracey Halton claims that she suffered from severe emotional distress resulting in headaches, insomnia, depression and anxiety. Ms. Halton Aff. at ¶ 55 However, as this Court has already determined, Ms. Halton suffered no discrimination by Defendants. Her claims of emotional distress are more likely associated with her employment related claims with Defendants.

ning, Sheila Halton, Mary Booker Lloyd, and Ella Reid.

Defendants' motion for summary judgment as to Plaintiffs' Ohio public accommodation claim is GRANTED except as to Plaintiffs Mia Allmond (on the issue of refusal to provide a perm); Brenda Lightning (on the issue of refusal to provide a fade haircut); and as to Plaintiffs' claims regarding price increases: Patricia Smith, Janet Mosley, Geraldine Stewart, Shirley Oldham, Brenda Lightning, Sheila Halton, Mary Booker Lloyd, and Ella Reid. The motion for summary judgment on Plaintiffs' claims of negligent and intentional infliction of emotional distress is GRANTED. And, Defendants' motion for summary judgment on the claim of negligence is GRANTED.

IT IS SO ORDERED.